## SAN ANTONIO PUBLIC SERVICE CO. v. LONG.

### No. 9391.

Court of Civil Appeals of Texas. San Antonio.

June 13, 1934.

Templeton, Brooks, Napier & Brown, of San Antonio, for appellant.

Marcus W. Davis, of San Antonio, for appellee.

BICKETT, Chief Justice.

San Antonio Public Service Company, appellant, instituted this suit against P. H. Long, appellee, seeking a temporary injunction and, upon final hearing, a permanent injunction to restrain him from the commission of alleged anticipated and unlawful acts of interference with its business.

This is an appeal from an order of the district court, made after notice and upon hearing of the pleadings and evidence, denying the application for temporary injunction.

Appellant is a corporation engaged in the manufacture and distribution of gas, the production and distribution of electricity, and the operation of street passenger motorbusses in the city of San Antonio. It transports large numbers of persons daily. And in the course of its business it has presented against it annually many claims for damages for alleged injuries to person and property, most of which are for small amounts and about 95 per cent. of which are settled by the claim agents of the company directly with the claimants.

Appellee is an attorney at law engaged in the practice of law in the same city.

A certain passenger on one of appellant's busses in the latter part of June, 1933, sustained a slight personal injury, and in the following month satisfactorily settled her claim through one of appellant's claim agents without the institution of a suit or the intervention of an attorney. There was an account of the accident published in two local newspapers. Subsequently, about September 9, 1933, this passenger received from appellee, a stranger to her, the letter hereinafter set forth, which was in printed, multigraphed, or mimeographed form upon his professional stationery with the name of the addressee and the local address and the salutation written in typewriting and with the signature of appellee made in ink.

This letter was as follows, to wit:

"P. H. Long
"Attorney at Law
"411 Houston Building
"San Antonio, Texas

"Mrs. J. McDade, 334 Jennings Ave., City.
"Dear Madam:

"Many persons, who suffer injuries through the negligence of others, are financially unable to pay a cash fee to an attorney for advice in connection with claim which they may have for damages against the person or corporation responsible for their injuries, and, due to the lack of such advice as to their rights in the premises, they are often taken advantage of by Claim Agents and representatives of the person or corporation responsible for such injuries, and are induced (often through misrepresentations) to settle their claim for an insignificant amount, wholly inadequate to compensate them for such injuries.

"As an attorney, experienced in the handling of such claims, I advise:

"1. Immediately get the names and addresses of all witnesses;

"2. If injured by automobile, get driver's name and license number of automobile;

"3. If injuries require medical attention, promptly call in your family physician, *but do not permit any other physician to examine you;*

"4. *Do not sign or make any statements for anyone except your own attorney.*

"Many attorneys are willing to handle such claims on a contingent basis, that is, without the payment of a cash fee, and I would therefore advise that you consult an attorney who is experienced in the handling of such claims, and follow his advice strictly, and not discuss your claim with anyone else, and make no settlement without the approval of your attorney.

"No charge is made for this advice, and it is not intended hereby to foment litigation, but it is given for the sole purpose of aiding those, who have been injured through the negligence of others, in procuring fair and just settlements of their claims, and to protect them against unscrupulous claim agents.

"Yours truly,        P. H. Long."

There was no evidence offered to show that appellee had sent a similar letter to any one else or that he intended to do so, unless the fixed form of the particular letter is circumstantial evidence upon the point.

Appellant's theory of its asserted cause of action, as shown by the petition, is that it fears appellee will mail similar letters to other persons having accidents in connection with its business, that the sending of such letters will be in violation of statute and contrary to good morals and public policy, and that those acts will constitute an unlawful interference with its business, particularly with respect to the handling and settling of claims which persons may have against it.

A letter, such as this one, is a form of solici-

tation, violating the barratry statute and defying the ethics and traditions of the honorable profession of the law. It is prepared in stereotyped form on the attorney's professional stationery, showing the office address and the business and residence telephone numbers. It opens with an appeal to the sympathy and innate sense of justice of the average man by referring to persons who may have suffered injuries through the negligence of others, who, for want of ready money, may not be able to obtain legal advice, and who, overreached by claim agents or other representatives of those legally liable, may settle their claims for wholly inadequate sums. It describes the attorney as one "experienced in handling such claims," and gratuitously gives four points of "advice." It explains the contingent fee basis of retaining an attorney, "without the payment of a cash fee," and advises the addressee of the letter to consult an attorney who is of the class mentioned in the previous self-commendatory statement, that is, "experienced in the handling of claims." It closes with a reminder that the advice is given as a gratuity, that it is not intended to foment litigation, and that it is given solely for the benevolent purpose of aiding the injured in procuring just settlements and protecting them against unscrupulous claim agents. Taken as a whole, it is an ingratiating suggestion for the establishment of the relation of attorney and client, to which is added a measure of self-laudation and a denial of barratrous intent. The gratuity was unwarranted by any prior relationship. As for virtue, she needs no herald. And the protestation against the thought of fomenting litigation is superfluous; it recalls the expressions of the disconsolate player queen, repelling the thought of another marriage and vowing life-long widowhood, of whom Hamlet's mother said, "The lady protests too much, methinks."

An opinion of the Committee of the American Bar Association on Professional Ethics and Grievances, rendered upon a similar letter, is of persuasive authority, especially in view of the eminence of the members of the committee which included the present president and others who are ex-presidents of the association and still others who hold or have held high judicial position. Opinion No. 9, of the Committee rendered April 28, 1926, dealt with a circular letter sent by an attorney of the Washington Bar, who specialized in international law, to persons who had claims against the Mexican government. The letter stated: That a claims agreement had been made between the United States and Mexico, that a claims commission would be shortly organized for the assessment of losses or damages sustained by citizens of either country arising from certain unlawful acts, that Mexico would pay claims in gold, that the commission would in due course issue regulations as to the manner of filing claims, and that it was important for all claimants to obtain necessary supporting evidence at the earliest possible date in appropriate form for presentation to the commission. The Committee held that the letter constituted a form of solicitation and was unbecoming conduct, contrary to sections 27 and 28 of the Canons of Professional Ethics as adopted by the American Bar Association.

The opinion of the Committee in that case was as follows:

"The contention that there is any duty upon a lawyer, in any branch of the law, to furnish presumptive claimants or litigants, with whom he has had no previous personal or professional relations which would justify such action, information as to how and when their claims must be presented, is untenable. The furnishing of such information by a lawyer to such persons, on his letterhead and over his signature, necessarily carries with it the implication that the lawyer is familiar with the subject and would be glad to be employed in connection therewith. As such it becomes a form of solicitation. Canon 27 condemns advertising and soliciting of any nature.

"The advocacy of claims before an International Claims Commission, empowered to make awards, may not be 'litigation' within the strict meaning of that word, though that word has sometimes been defined as 'any controversy that must be decided upon evidence.' Quite irrespective of any precise definition, it is the opinion of the committee that to volunteer information by a letter, such as was employed in this case, regarding claims to be presented to such a commission, is unbecoming and is conduct of the very nature condemned by Canon 28."

But with the character of this letter established, the temporary injunction was properly denied, because it was uncertain and conjectural as to whether appellee would in the future send such a letter to claimants against appellant and, if he should do so, whether it would interfere with the right of appellant to conduct its business.

It is not enough to plead and prove that this particular letter was a form letter and that it was sent to one person whose claim

against appellant had already been settled. The fear of appellant that appellee intends to send such a letter to others having claims against it will not suffice. And the showing of threatened injury is as speculative as that of intention. The petition contained only generalities as to the supposed interference with its business that would result from claimants receiving such a letter. There were no allegations of specific facts as to threatened injury. There was no evidence whatever on that subject. Inferences and suspicions cannot take the place of pleading and proof. The extraordinary remedy of injunction will not lie to prevent an alleged threatened act, the commission of which is speculative and the injury from which is purely conjectural. Dunn v. City of Austin, 77 Tex. 139, 11 S. W. 1125; Holbein v. De La Garza, 59 Tex. Civ. App. 125, 126 S. W. 42; Fleming & Davidson v. Rohleder (Tex. Civ. App.) 135 S. W. 735; Browning v. Hinerman (Tex. Civ. App.) 224 S. W. 236; Kean & Crofford Co. v. City of Dallas (Tex. Civ. App.) 244 S. W. 655; Thomas v. Bunch (Tex. Civ. App.) 41 S.W.(2d) 359.

The judgment of the district court is affirmed.